KNOLL, Justice.
11 This criminal post-conviction proceeding presents the res nova issue of whether Miller v. Alabama, 567 U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), in which the United States Supreme Court held mandatory life imprisonment without parole for juvenile homicide offenders violates the Eighth Amendment prohibition of cruel and unusual punishments, applies retroactively in state collateral proceedings. The defendant, Darryl Tate, whose mandatory life-without-parole sentence for a second-degree murder he committed as a juvenile became final in 1984, filed a motion seeking resentencing in light of Miller. The District Court denied his motion, but the Court of Appeal granted writs, remanding the matter for a sentencing hearing. We granted writs to address the retroactivity of Miller to those juvenile homicide convictions final at the time Miller was rendered. State v. Darryl Tate, 12-2763 (La.4/19/13), 111 So.3d 1023. For the following reasons, we find Miller does not apply retroactively in cases on collateral review as it merely sets forth a new rule of criminal constitutional procedure, which is neither substantive nor implicative of the fundamental fairness and accuracy of criminal proceedings. Therefore, we reverse the judgment of the Court of Appeal and reinstate the judgment of the District Court.
| ¡¡FACTS
Around 2:20 a.m. on April 1, 1981, Tate robbed Keith Dillan and Anthony Jeffrey at gunpoint as the victims sat inside Jeffrey’s car in a parking lot near South Rampart and Calliope Streets in New Orleans, Louisiana. Dillan testified he saw *832 Tate illuminated by streetlights as he approached the car and looked directly at him for a few seconds when he leaned over the driver’s seat to give the gunman his money. After Dillan gave him 40$, Tate demanded money from Jeffrey and then shot him in the chest when Jeffrey tried to start the car in an apparent attempt to flee. Dillan escaped and called police, but Jeffrey was pronounced dead at the scene.
Tate was subsequently linked to this homicide after he was arrested and charged with a separate armed robbery and attempted murder of a tourist outside the French Quarter, and tests determined his weapon was the one used to shoot Jeffrey. Dillan then identified Tate as the person who robbed him and killed Jeffrey.
On November 9, 1982, Tate pleaded guilty to second-degree murder, attempted first-degree murder, and armed robbery, while reserving the right to appeal the denial of his motion to suppress the identification pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The criminal district court sentenced him to concurrent terms of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, 50 years imprisonment at hard labor, and 50 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The Court of Appeal affirmed. State v. Tate, 454 So.2d 391 (La.App. 4th Cir.1984). According to the arrest register and the grand jury indictment, Tate was born on November 6, 1963, and, therefore, was seventeen years and five months of age at the time he committed the offenses.
[3In 2012, Tate pro se filed what he captioned as a motion to correct an illegal sentence, requesting resentencing in light of the recently decided Miller. On October 29, 2012, the District Court denied his motion, holding:
The defendant was convicted and sentenced within the approved sentencing guidelines. As such, the defendant’s motion to correct an illegal sentence is denied.
The defendant asserts that at the time of the commission of the crime he was a minor under the age of eighteen (18). While this is true, the defendant was under the age of eighteen, he was seventeen (17) years old when he committed the offenses. Under Louisiana law with regard tó criminal prosecution he is considered an adult and was sentenced accordingly.
The Court of Appeal, Fourth Circuit, however, granted writs, reasoning:
In Miller v. Alabama, 567 U.S.-, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), the Court held that mandatory life imprisonment without parole for those offenders under the age of eighteen years at the time they committed a homicide offense violates the Eighth Amendment prohibition of “cruel and unusual punishments.” Id., 567 U.S. at-, 132 S.Ct. at 2466. As the Louisiana Supreme Court found in two per curiam opinions, the Court did not prohibit life imprisonment without parole for juveniles, but instead required that a sentencing court consider an offender’s youth and attendant characteristics as mitigating circumstances before deciding to impose the harshest possible penalty for juveniles who have committed a homicide offense. State v. Simmons, 2011-1810 (La.10/12/12), 99 So.3d 28; State v. Graham, 2011-2260 (La.10/12/12), 99 So.3d 28. Therefore, the district court’s judgment denying relator’s motion to correct an illegal sentence on October 29, 2012 is hereby vacated. The matter is remanded for reconsideration after conducting a sentencing hearing in accord with the principles enunciated in Miller and stating the reasons for reconsideration and sentencing on the record within *833 sixty days of this order. See Simmons; Graham. As proof of compliance, the district court is ordered to provide this Court with a copy of its reasons following the hearing.
State v. Tate, 12-1671 (La.App. 4 Cir. 12/19/12) (unpub’d).
l/To resolve the dispute between the lower courts regarding the retroactivity of Miller on collateral review,[1] we begin with an in-depth examination of its holding.
DISCUSSION
In Miller, the Supreme Court specifically held “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders,” finding instead the sentencing court must first hold a hearing to consider mitigating factors, such as the defendant’s youth, before imposing this severe penalty. Miller, 132 S.Ct. at 2469. In so doing, the Supreme Court resolved the issue left unanswered by the Graham v. Florida categorical ban |son life imprisonment without parole sentences for non-homicide juvenile offenders and the Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) categorical ban on capital punishment for juvenile offenders.
Keeping with its reasoning in Graham and Roper, the Supreme Court explained *834 “[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment.” Miller, 132 S.Ct. at 2469. However, it rejected arguments for a categorical bar similar to Graham and Roper, stating “[although we do not foreclose a sentencer’s ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Id. In clarifying its holding, the Supreme Court emphasized:
.... Our decision does not categorically bar a penalty for a class of offenders or type of crime — as, for example, we did in Roper or Graham. Instead, it mandates only that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty. And in so requiring, our decision flows straightforwardly from our precedents: specifically, the principles of Roper, Graham, and our individualized sentencing cases that youth matters for purposes of meting out the law’s most serious punishments.
Id. at 2471.
Our task in the present case is determining whether Tate and other offenders, whose convictions for homicides committed while juveniles were final when Miller was rendered, are now entitled to the benefit of the rule announced in Miller. Dispositive herein, therefore, is whether Miller is subject to retroactive application in state collateral proceedings.
As we stated in State ex rel. Taylor v. Whitley, 606 So.2d 1292, 1297 (La.1992), cert. denied, 508 U.S. 962, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993), the standards for determining retroactivity set forth in Teague v. Lane, 489 U.S. 288, 6109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), apply to “all cases on collateral review in our state courts.” Accordingly, our analysis is directed by the Teague inquiry.
We conduct this inquiry in three steps:
First, the date on which the defendant’s conviction became final is determined. Lambrix v. Singletary, 520 U.S. 518, 527, 117 S.Ct. 1517, 1524, 137 L.Ed.2d 771 (1997). Next, the habeas court considers whether “ ‘a state court considering [the defendant’s] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.’ ” Ibid. (quoting Saffle v. Parks, 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990))(alterations in Lam-brix ). If not, then the rule is new. If the rule is determined to be new, the final step in the Teague analysis requires the court to determine whether the rule nonetheless falls within one of the two narrow exceptions to the Teague doctrine. 520 U.S., at 527, 117 S.Ct., at 1524-1525. The first, limited exception is for new rules “forbidding criminal punishment of certain primary conduct [and] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.” Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989). The second, even more circumscribed, exception permits retroactive application of “watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.” Graham [v. Collins, 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) ], supra, at 478, 113 S.Ct., at 903 (quoting Teague, supra, at 311, 109 S.Ct., at 1075)(internal quotation marks omitted). “Whatever the precise scope *835 of this [second] exception, it is clearly meant to apply only to a small core of rales requiring observance of those procedures that ... are implicit in the concept of ordered liberty.” Graham, supra, at 478, 113 S.Ct., at 903 (internal quotation marks omitted).
O’Dell v. Netherland, 521 U.S. 151, 156-57, 117 S.Ct. 1969, 1973, 138 L.Ed.2d 351 (1997) (holding rule announced in Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), requiring capital defendants be permitted to inform sentencing jury of his parole ineligibility if State argues his future dangerousness, was procedural and not retroactive).
Applying the Teague analysis herein, we must first determine when Tate’s conviction became final. Under our Code of Criminal Procedure, direct appeal in Tate’s case was completed when he neither sought rehearing of the Court of ^Appeal’s affirmation of his conviction and sentence rendered on July 31, 1984, nor applied to this Court for a writ of certiorari. See La. Code Crim. Proe. art. 922 (“Within fourteen days of rendition of the judgment of ... any appellate court, in term time or out, a party may apply to the appropriate court for a rehearing.... A judgment rendered by ... [an] appellate court becomes final when the delay for applying for rehearing has expired and no application therefore has been made.”). Accordingly, we find Tate’s conviction became final on August 14, 1984, when the delays for applying for rehearing expired.
The next question we must resolve then is whether the rule prohibiting mandatory life imprisonment for homicides committed by juveniles is “new,” ie., not “dictated by precedent existing at the time the defendant’s conviction became final.” Whorton v. Bockting, 549 U.S. 406, 416, 127 S.Ct. 1173, 1180, 167 L.Ed.2d 1 (2007) (emphasis in original). This distinction is relevant because
... [w]hen a decision of this Court results in a “new rule,” that rule applies to all criminal cases still pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances. New substantive rules generally apply retroactively. ... New rales of procedure, on the other hand, generally do not apply retroactively.... [W]e give retroactive effect to only a small set of “ ‘watershed rules of criminal procedure’ implicating the fundamental fairness and accuracy of the criminal proceeding.”
Summerlin, 542 U.S. at 351-52, 124 S.Ct. at 2522 (citations omitted)(alterations and emphasis in original)(holding the rule announced in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)— the existence of an aggravating factor in capital cases must be proved to a jury rather than a judge — was procedural and not retroactive).
Utilizing these principles, we find, and the parties do not dispute, Miller establishes a new rale. This is so because when Tate’s conviction became final in 1984, Miller was not dictated by precedent as neither Roper nor Graham, upon | ¿which the Miller Court relied, had been decided. See Miller, 132 S.Ct. at 2471 (holding its decision flows straightforwardly from its precedents, specifically Roper, Graham, and its individualized sentencing cases). “Instead, Miller established for the first time a requirement of individualized sentencing outside the death penalty context.” Craig v. Cain, 2013 WL 69128, at *1 (5th Cir.2013); see also Ware, 2013 WL 4777322, at *3; Morgan, 713 F.3d at 1366; People v. Carp, 298 Mich.App. 472, 828 N.W.2d 685, 708 (2012); Chambers v. State, 831 N.W.2d 311, 326 (Minn.2013); People v. Morfin, 367 Ill.Dec. 282, 981 *836 N.E.2d 1010, 1022 (Ill.App. 1 Dist.2012). Therefore, we properly categorize the Miller rule as new.
Given this designation, we must now determine whether this new rule is substantive or procedural in nature, and if procedural, whether it falls within the “watershed” exception to the rule of non-retro-activity. See Summerlin, 542 U.S. at 351-52, 124 S.Ct. at 2522.
We note while the “distinction between substance and procedure is an important one,” it is not necessarily always a simple matter to divine. Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998). The Supreme Court has, however, sought to clarify the difference between substantive and procedural rules in several of its decisions along the Teague continuum.
On one hand, the Supreme Court in Summerlin explained a new rule is “substantive ” if the rule “narrow[s] the scope of the criminal statute by interpreting its terms,” or “placets] particular conduct or persons covered by the statute beyond the State’s power to punish.” 542 U.S. at 351-52, 124 S.Ct. at 2522 (citations omitted). This definition “cover[s] not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.” Penry, 9492 U.S. at 329, 109 S.Ct. at 2953. Such rules “apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal” or “faces a punishment that the law cannot impose upon him” because of his status or offense. Summerlin, 542 U.S. at 352, 124 S.Ct. at 2522-23 (quoting Bousley, 523 U.S. at 620-21, 118 S.Ct. at 1610)(internal quotation marks removed).
In contrast, rules “regulatfing] only the manner of determining the defendant’s culpability are procedural.” Summerlin, 542 U.S. at 353, 124 S.Ct. at 2523 (emphasis in original). This is so because “[t]hey do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.” Id. at 352, 124 S.Ct. at 2523. The Supreme Court has further extended this definition to rules regulating the manner of determining a defendant’s sentence when such rules “neither decriminalize a class of conduct nor prohibit the imposition of ... punishment on a particular class of persons.” Lambrix v. Singletary, 520 U.S. 518, 539, 117 S.Ct. 1517, 1531, 137 L.Ed.2d 771 (1997)(holding the rule announced in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) — capital juries may not weigh invalid aggravating circumstances — was procedural); see also Sawyer v. Smith, 497 U.S. 227, 241, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990)(holding the rule announced in Caldwell v. Mississippi, 472 U.S. 320, 341, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)— capital juries must be made aware of the gravity of its task — was procedural).
In summary,
... a new rule regarding sentencing is substantive if it eliminates the power of the State to impose the punishment in question regardless of the procedures followed. Penry, 492 U.S. at 330, 109 S.Ct. 2934. On 10the other hand, the new rule is procedural if it regulates the manner in which the State exercises its continuing power to impose the punishment in question. Lambrix, 520 U.S. at 539, 117 S.Ct. 1517.
Chambers, 831 N.W.2d at 327.
Judged by this standard, we find the Miller holding is properly classified as procedural. Miller held juveniles could *837 not mandatorily be sentenced to life imprisonment without parole in homicide cases, invalidating a sentencing scheme mandating such harsh punishment without consideration of the unique characteristics of a juvenile offender. It did not alter the range of conduct or persons subject to life imprisonment without parole for homicide offenses, nor did it eliminate a State’s power to impose such a sentence on a juvenile offender, specifically holding: “Our decision does not categorically bar a penalty for a class of offenders or type of crime.” Miller, 132 S.Ct. at 2471; see also Morgan, 713 F.3d at 1368. While the Court opined “appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon,” it specifically did not “foreclose a sentencer’s ability to make that judgment in homicide cases.... ” Miller, 132 S.Ct. at 2469; see also Morgan, 713 F.3d at 1368; Ware, 2013 WL 4777322, at *3.
Moreover, it did not alter the elements necessary for a homicide conviction. See Chambers, 831 N.W.2d at 329; Carp, 828 N.W.2d at 711; see also Summerlin, 542 U.S. at 354, 124 S.Ct. at 2524. Rather, it simply altered the range of permissible methods for determining whether a juvenile could be sentenced to life imprisonment without parole for such a conviction, “mandating] only that a sentence follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty.” Miller, 132 S.Ct. at 2471; see also Summerlin, 542 U.S. at 353, 124 S.Ct. at 2523; Morgan, 713 F.3d at 1368; 11Chambers, 831 N.W.2d at 328. As the Summerlin Court explained, when determining the retroac-tivity of the rule announced in Ring v. Arizona, supra:
.... Ring held that “a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty.” 536 U.S., at 609, 122 S.Ct. 2428. Rather, “the Sixth Amendment requires that [those circumstances] be found by a jury.” Ibid. This holding did not alter the range of conduct Arizona law subjected to the death penalty. It could not have; it rested entirely on the Sixth Amendment’s jury-trial guarantee, a provision that has nothing to do with the range of conduct a State may criminalize. Instead, Ring altered the range of permissible methods for determining whether a defendant’s conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate de-cisionmaking authority in this fashion are prototypical procedural rules, a conclusion we have reached in numerous other contexts.
[[Image here]]
A decision that modifies the elements of an offense is normally substantive rather than procedural. New elements alter the range of conduct the statute punishes, rendering some formerly unlawful conduct lawful or vice versa. But that is not what Ring did; the range of conduct punished by death in Arizona was the same before Ring as after. Ring held that, because Arizona’s statutory aggravators restricted (as a matter of state law) the class of death-eligible defendants, those aggravators effectively were elements for federal constitutional purposes, and so were subject to the procedural requirements the Constitution attaches to trial of elements. This Court’s holding that, because Arizona has made a certain fact essential to the death penalty, that fact must be found by a jury, is not the same as this Court’s making a certain fact essential to the death penalty. The former was a procedural holding; the latter would be substantive.
*838 Summerlin, 542 U.S. at 353-55, 124 S.Ct. at 2523-24 (citations and footnote omitted).
Therefore, because the Miller Court, like the Court in Summerlin, merely altered the permissible methods by which the State could exercise its continuing power, in this case to punish juvenile homicide offenders by life imprisonment 112without the possibility of parole, we find its ruling is procedural, not substantive in nature.[2]
| r/rhis does not, however, end our inquiry. While Miller does not meet the substantive exception recognized in Teag-ue, a second exception exists, which may render a new procedural rule retroactive on collateral review: “A new rule applies retroactively in a collateral proceeding *839 only if ... the rule is a ‘ “watershed rul[e] of criminal procedure” ’ implicating the fundamental fairness and accuracy of the criminal proceeding.” Whorton, 549 U.S. at 416, 127 S.Ct. 1173, 1180 (alteration in original)(citing Saffle, 494 U.S. at 495, 110 S.Ct. 1257, quoting Teague, 489 U.S. at 311, 109 S.Ct. 1060). In order to qualify as watershed, a new rule must meet two requirements:
First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.
Whorton, 549 U.S. at 418, 127 S.Ct. at 1182 (citations and quotation marks omitted).
This exception, though, “is extremely narrow,” and since its decision in Teague, the Supreme Court has “rejected every claim that a new rule satisfied the requirements for watershed status.” Id. at 417-18, 127 S.Ct. at 1181-82. In fact, the Court has indicated “it is unlikely that any” watershed rules have “ ‘yet to emerge.’ ” Summerlin, 542 U.S. at 352, 124 S.Ct. at 2519 (quoting Tyler, 533 U.S. at 667 n. 7, 121 S.Ct. 2478).[3] The only *840 case ever to satisfy this high threshold is 14Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the Court “held that counsel must be appointed for any indigent defendant charged with a felony” because “[w]hen a defendant who wishes to be represented by counsel is denied representation, Gideon held, the risk of an unreliable verdict is intolerably high. The new rule announced in Gideon eliminated this risk.” Whorton, 549 U.S. at 419, 127 S.Ct. at 1182. Therefore, it is not enough that a new rule is aimed at improving the accuracy of trial, or even that it promotes the objectives of fairness and accuracy; the rule must institute procedures implicit in the concept of ordered liberty to come within this exception.
Applying these requirements, we find the Miller ruling fails to satisfy the initial requirement pertaining to an “impermissi-bly large risk” of an inaccurate conviction. See Summerlin, 542 U.S. at 356, 124 S.Ct. at 2525. Miller deals exclusively with sentencing and does not pertain to criminal trial procedures | pleading to conviction. It focuses solely on accuracy in sentencing and does not address or impinge on the accuracy of a juvenile defendant’s conviction for a homicide offense. Thus, unlike the expansive rule in Gideon, the Miller rule neither impacts nor relates to the accuracy of the underlying determination of guilt or innocence. See Chambers, 831 N.W.2d at 330; Carp, 828 N.W.2d at 711.
Moving on to the second criteria that a watershed rule “must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding,” we find Miller falls woefully short of the rule announced in Gideon. See Whorton, 549 U.S. at 418, 127 S.Ct. at 1182; Summerlin, 542 U.S. at 356, 124 S.Ct. at 2525. As the Supreme Court has repeatedly explained, this second requirement “cannot be met simply by showing that a new procedural rule is based on a ‘bedrock’ right.” Whorton, 549 U.S. at 420-21, 127 S.Ct. at 1183 (emphasis in original). Similarly, “that a new procedural rule is fundamental in some abstract sense is not enough.” Id,. Rather, the new rule “must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding.” Id. at 421, 127 S.Ct. at 1184 (citations omitted). The Miller Court’s review of its precedents
... demonstrates that its holding was not a “watershed” development. The Court’s cases have long established that “sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual.” Abdul-Kabir v. Quarterman, 550 U.S. 233, 246, 127 S.Ct. 1654, 167 L.Ed.2d 585 (2007)(citing Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976))(holding that the imposition of mandatory death sentence without consideration of the character and record of the individual offender or the circumstances of the particular offense was inconsistent with the fundamental respect for humanity that underlies the Eighth Amendment); Penry, 492 U.S. at 328, 109 S.Ct. 2934 (“In order to ensure ‘reliability in the determination that death is the appropriate punishment in a specific case,’ ... the *841 jury must be able to consider and give effect to any mitigating evidence relevant to a defendant’s background and character or the circumstances of the crime.” (citation omitted); Eddings v. Oklahoma, 455 U.S. 104, 112, 16102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (“[T]he sentencer in capital cases must be permitted to consider any relevant mitigating factor.”); Lockett v. Ohio, 488 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)(plurality opinion)(“[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.”)). Miller’s extension of this well-established principle to non-capital sentencing does not rise to the level of a rule like Gideon that “ ‘alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding.’ ” Whorton, 549 U.S. at 420, 127 S.Ct. 1173 (emphasis added) (quoting Tyler, 533 U.S. at 665, 121 S.Ct. 2478).
Chambers, 831 N.W.2d at 330-31. The Miller Court even explicitly acknowledged its decision was an outgrowth of its prior decisions pertaining to individualized-sentencing determinations. Miller, 132 S.Ct. at 2471; see also Craig, 2013 WL 69128, at *2; State v. Huntley, 13-127, p. 13 (La. App. 3 Cir. 7/10/13), 118 So.3d 95, 103.
Moreover, while Miller will indisputably have an effect on sentencing procedures for juveniles, we find it cannot be construed to qualify as being “in the same category with Gideon ” in having “effected a profound and ‘sweeping’ change.” Whorton, 549 U.S. at 421, 127 S.Ct. at 1184 (citations omitted); see also Ware, 2013 WL 4777322, at *3; Craig, 2013 WL 69128, at *2. We note “[i]t has none of the primacy and centrality of the rule adopted in Gideon ” and applies “fairly narrowly” to a small subset of defendants — juvenile homicide offenders — thus, “working] no fundamental shift in ‘our understanding of the bedrock procedural elements’ essential to fundamental fairness.” Beard v. Banks, 542 U.S. 406, 420, 124 S.Ct. 2504, 2515, 159 L.Ed.2d 494 (2004) (citing Saffle, 494 U.S. at 495, 110 S.Ct. 1257, and quoting O’Dell, 521 U.S. at 167, 117 S.Ct. 1969).
It follows, therefore, the rule announced in Miller “is a new rule of criminal constitutional procedure that is neither substantive nor a watershed rule that alters |17our understanding of the bedrock procedural elements essential to the fairness of a proceeding.” Chambers, 831 N.W.2d at 331; see also Craig, 2013 WL 69128, at *2; Carp, 828 N.W.2d at 712.[4] Consequently, we find Tate and those other similarly situated defendants are not entitled to the retroactive benefit of the Miller rule in post-conviction proceedings.
One final issue for this Court to address is the implications arising from the Legislature’s response to the Miller decision— 2013 La. Act 239 (“the Act”). After this *842 matter was docketed, the Legislature enacted the Act to comply with Miller, providing parole consideration for juveniles sentenced to life imprisonment for first or second-degree murder. As a means to that end, the Act created La.Code Crim. Proc. art. 878.1, which directs the district courts to conduct a hearing before sentencing to determine whether the life sentence to be imposed on a juvenile homicide offender should be with or without parole eligibility:
A. In any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).
B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender’s level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.
18La.Code Crim. Proc. art. 878.1. The Act also created La.Rev.Stat. § 15:574.4(E)(1), which provides the conditions that must be met by any juvenile homicide offender serving a sentence with a judicial determination of parole eligibility pursuant to Article 878.1 in order to be considered for parole:
Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense shall be eligible for parole consideration pursuant to the provisions of this Subsection if a judicial determination has been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1 and all of the following conditions have been met:
(a) The offender has served thirty-five years of the sentence imposed.
(b) The offender has not committed any disciplinary offenses in the twelve consecutive months prior to the parole eligibility date.
(c) The offender has completed the mandatory minimum of one hundred hours of prerelease programming in accordance with R.S. 15:827.1.
(d) The offender has completed substance abuse treatment as applicable.
(e) The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability. If the offender is deemed incapable of obtaining a GED certification, the offender shall complete at least one of the following:
(i) A literacy program.
(ii) An adult basic education program.
(iii) A job skills training program.
(f) The offender has obtained a low-risk level designation determined by a validated risk assessment instrument *843 approved by the secretary of the Department of Public Safety and Corrections.
(g) The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.
La.Rev.Stat. § 15:574.4(E)(1).
|1flIt falls to this Court to determine whether the Act applies to Tate and similarly situated defendants retroactively. In making this determination we are guided by the rules of statutory interpretation.
Pursuant to these rules, the interpretation of any statutory provision starts with the language of the statute itself. Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 11 (La.12/16/11), 79 So.3d 987, 997. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. Civ.Code art. 9; La.Rev.Stat. § 1:4; In re Clegg, 10-0323, p. 20 (La.7/6/10), 41 So.3d 1141, 1154. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. Civ.Code art. 11; La.Rev. Stat. § 1:3; see also Snowton v. Sewerage and Water Bd., 08-399, pp. 5-6 (La.3/17/09), 6 So.3d 164, 168.
Words and phrases must be read with their context and construed according to the common and approved usage of the language. La.Rev.Stat. § 1:3. Courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and sur-plusage if a construction giving force to and preserving all words can legitimately be found. Oubre, 11-0097 at 12, 79 So.3d at 997.
It is also a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. State v. Carr, 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274. Criminal statutes, therefore, are given a narrow interpretation. State v. Becnel, 93-2536, p. 2 (La.5/31/96), 674 So.2d 959, 960. Bound by a strict interpretation of the plain language of its criminal provisions, we turn now to the Act and the specific statutory provisions at [ tissue.
Reading the Act plainly, we find Article 878.1 provides a new procedure by which a hearing shall be conducted prior to sentencing in any case where a juvenile “offender is to be sentenced to life imprisonment for a conviction of first degree murder ... or second degree murder.” As directed by our rules of statutory construction, we interpret the use of the present tense of the verb “to be,” i.e., “is,” rather than the past — “was”—or past perfect — “has been” — tenses, as clearly indicative of legislative intent to apply the statute prospectively only. See La.Rev.Stat. §1:3 (words must be construed according to their common and approved usage); State v. Oliphant, 12-1176, p. 5 (La.3/19/13), 113 So.3d 165, 168.
In keeping with this clear intent, La.Rev.Stat. § 15:574.4(E)(1) then provides for parole consideration for any person serving a sentence with parole eligibility under the new procedure if several conditions are met, stating:
... any person serving a sentence of life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense shall be eligible for parole consideration pursuant to the provisions of this Subsection if a judicial determination has *844 been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1 and all of the following conditions have been met.
La.Rev.Stat. § 15:574.4(E)(1)(emphasis added). Because the only persons who will be serving sentences in which parole eligibility has been determined under the newly enacted Article 878.1 will necessarily be serving their sentences after the article’s enactment, we find La.Rev.Stat. § 15:574.4(E)(1) likewise applies prospectively only.[5] Accordingly, we logically conclude neither La.Code Crim. 21Proc. art. 878.1 nor La.Rev.Stat. § 15:574.4(E)(1) apply to Tate or similarly situated defendants because they have already been sentenced for their homicide convictions and no judicial determination has been made that they are entitled to parole eligibility pursuant to the newly enacted Article 878.1.
CONCLUSION
In conclusion, we find, under the Teague analysis, Miller sets forth a new rule of criminal constitutional procedure, which is neither a substantive nor a watershed rule implicative of the fundamental fairness and accuracy of the criminal proceeding. Accordingly, we find the Miller rule is not subject to retroactive application on collateral review. We likewise find, under its plain and unambiguous language, 2013 La. Acts 239 applies prospectively only. Accordingly, we reverse the judgment of the Court of Appeal and reinstate the judgment of the District Court in its entirety.
DECREE
For the foregoing reasons, the judgment of the Court of Appeal is reversed and the judgment of the District Court is hereby reinstated.
REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED.
JOHNSON, Chief Justice, dissents and assigns reasons.
HUGHES, Justice, dissents for the reasons assigned by JOHNSON, C.J.

. Notably, this Court has twice granted applications on collateral review to remand for reconsideration of sentence after conducting a new sentencing hearing in accordance with the principles enumerated in Miller: State v. Simmons, 11-1810 (La.10/12/12), 99 So.3d 28; and State ex rel. Landry v. State, 11-0796 (La. 1/18/13), 106 So.3d 106. Emerson Simmons is serving a life-without-parole sentence for a second-degree murder committed during a home invasion with two friends in 1995, when he was seventeen years of age. Simmons admitted participating in the robbery, but denied he was the shooter. Direct appeal was completed in 2000. See State v. Simmons, 99-93 (La.App. 5 Cir. 4/12/00), 759 So.2d 940. Albert Landry is serving a life-without-parole sentence for a second-degree murder committed during a robbery with two friends in 1976, when he was seventeen years of age. Landry was not the shooter, but was convicted as a principal to the murder. Direct appeal was completed in 1978. See State v. Landry, 360 So.2d 184 (La.1978).
In 2011, Simmons through counsel and Landry pro se each filed a motion to correct an illegal sentence in which they contended life-without-parole sentences for juvenile offenders are no longer constitutionally permissible under developing legal standards and, in particular in light of Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding life-without-parole sentences are unconstitutionally cruel and unusual as applied to juvenile non-homicide offenders). In both Simmons and Landry, we remanded to the district court for resentencing in accord with Miller. Similarly, in Jackson v. Hobbs, the companion case to Miller, the Supreme Court reversed the Arkansas courts, which had denied state habeas relief to Kuntrell Jackson, whose conviction and sentence for capital murder were final, and remanded for further proceedings consistent with Miller. Jackson was fourteen years of age at the time of the offense, and like Simmons and Landry, though involved in the perpetration of an armed robbery, Jackson did not fire the fatal shot.
Nevertheless, neither Simmons nor Landry is controlling herein as this Court did not explicitly address the issue of retroactivity in those per curiams. Nor does the mere fact the Supreme Court remanded Jackson for re-sentencing constitute a ruling or determination on retroactivity because "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive.” See Tyler v. Cain, 533 U.S. 656, 663, 121 S.Ct 2478, 2482, 150 L.Ed.2d 632 (2001); see also Ware v. King, 2013 WL 4777322, at *3 (S.D.Miss.2013); In re Morgan, 713 F.3d 1365 (11th Cir.2013).
We also granted an application on direct review and remanded for resentencing in State v. Graham, 11-2260 (La.10/12/12), 99 So.3d 28. However, as that matter was on direct review it is clearly inapplicable in the present proceedings. See Schriro v. Summerlin, 542 U.S. 348, 351, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004)("When a decision of this Court results in a ‘new rule,' that rule applies to all criminal cases still pending on direct review.”).

. In contrast, an Illinois intermediate appellate court has found Miller applies retroactively because it announced a new substantive rule:
.... While it does not forbid a sentence of life imprisonment without parole for a minor, it does require Illinois courts to hold a sentencing hearing for every minor convicted of first degree murder at which a sentence other than natural life imprisonment must be available for consideration. Miller mandates a sentencing range broader than that provided by statute for minors convicted of first degree murder who could otherwise receive only natural life imprisonment.
Morfin, 367 Ill.Dec. 282, 981 N.E.2d at 1022. The Iowa Supreme Court has held likewise, reasoning:
_While Graham flatly prohibits the imposition of a life-without-parole sentence for a nonhomicide crime committed by a juvenile in order to afford the juvenile a meaningful opportunity to gain release in the future based on maturity and rehabilitation, ... Miller prohibits mandatory life-without-parole sentences for juveniles, but would seemingly permit life-without-parole sentences that are not mandated by statute if the sentencing court has the power to consider the attributes of youth in the mitigation of punishment....
From a broad perspective, Miller does mandate a new procedure. Yet, the procedural rule for a hearing is the result of a substantive change in the law that prohibits mandatory life-without-parole sentencing. Thus, the case bars states from imposing a certain type of punishment on certain people. See Schriro v. Summerlin, 542 U.S. 348, 352, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442, 448 (2004) (recognizing rules placing certain groups beyond the power of the state to punish are given retroactive application). 'Such rules apply retroactively because they "necessarily carry a significant risk that a defendant” ... faces a punishment that the law cannot impose upon him.’ See id. at 352, 124 S.Ct. at 2522-23, 159 L.Ed.2d at 448 (quoting Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998)).
State v. Ragland, 836 N.W.2d 107, 115 (Iowa 2013). Similarly, the Mississippi Supreme Court recently found “Miller created a new, substantive rule which should be applied retroactively to cases on collateral review,” reasoning:
Although Miller did not impose a categorical ban on the punishment that the substantive law could impose, it explicitly foreclosed imposition of a mandatory sentence of life without parole on juvenile offenders. By prohibiting the imposition of a mandatory sentence, the new obligation prevents "a significant risk that a [juvenile] ... faces a punishment that the law cannot impose on him.” Id.
"[Sjubstantive rules ... include[ ] decisions that narrow the scope of a criminal statute by interpreting its terms.” [Summerlin,] at 351-52, 124 S.Ct. 2519 (citing Bousley v. United States, 523 U.S. 614, 620-621, 118 S.Ct. 1604, 140 L,Ed.2d 828 (1998)). Prior to Miller, everyone convicted of murder in Mississippi was sentenced to life imprisonment and was ineligible for parole. Following Miller, Mississippi’s current sentencing and parole statutes could not be followed in homicide cases involving juvenile defendants. Our sentencing scheme may be applied to juveniles only after applicable Miller characteristics and circumstances have been considered by the sentencing authority. As such, Miller modified our substantive law by narrowing its application for juveniles.
Jones v. State, 122 So.3d 698, 701-02 (Miss.2013).

. The following is a summary of the post-Teague decisions in which the Supreme Court found a new rule would not qualify under the watershed exception:
The sentencing cases are: (1) Saffle v. Parks, 494 U.S. 484, 486, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (holding that a new rule that forbids the trial court from "telling the jury to avoid any influence of sympathy, violates the Eighth Amendment” — is not watershed): (2) Sawyer v. Smith, 497 U.S. 227, 233, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (determining that the new rule of Caldwell v. Mississippi, 472 U.S. 320, 328-29, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) — holding that "the Eighth Amendment prohibits the imposition of a death sentence by a sentencer that has been led to the false belief that the responsibility for determining the appropriateness of the defendant’s capital sentence rests elsewhere” — is not watershed); (3) Graham v. Collins, 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (concluding that a proposed new rule that bars jury instructions that forbid a sentencing jury to consider mitigating evidence would not be watershed); (4) Caspari v. Bohlen, 510 U.S. 383, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (determining that the application of the Double Jeopardy Clause to noncapital sentencing proceedings constituted a new rule that is not watershed); (5) Gray v. Netherland, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (establishing that the new rule that requires the state to give adequate notice of the evidence it intends to use in the sentencing phase is not watershed); (6) O’Dell v. Netherland, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (concluding that the new rule of Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994)— holding that a defendant has a right to inform a sentencing jury contemplating capital punishment that he is parole-ineligible and therefore not a future danger — is not watershed); (7) Beard v. Banks, 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (deciding that the new rule of Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988)—holding unconstitutional capital sentencing schemes that require juries to disregard mitigating factors not unanimously found — is not watershed); and (8) Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L:Ed.2d 442 (2004) (settling that the new rule of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which held that aggravating factors which make a defendant eligible for the death penalty must be proved to a jury rather than a judge, is not watershed). The non-sentencing .cases are: (1) Butler v. McKellar, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990)(holding that the new rule of Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) — barring police-initiated interrogation following a suspect's request for counsel — is not watershed); (2) Gilmore v. Taylor, 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993)(concluding that the new rule of Falconer v. Lane, 905 F.2d 1129 (7th Cir.1990) — holding unconstitutional jury instructions that allowed murder convictions without consideration of a diminished mental state — is not watershed); and *840 (3) Goeke v. Branch, 514 U.S. 115, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995) (per cu-riam)(determining that a new rule that gave a recaptured fugitive a right to appeal is not watershed).
Ezra D. Landes, A New Approach to Overcoming the Insurmountable "Watershed Rule” Exception to Teague’s Collateral Review Killer, 74 Mo. L.Rev. 1, 11 n. 67 (2009).

. In contrast, an Illinois intermediate appellate court has found Miller falls within the watershed exception for rules, reasoning:
.... We find that Miller not only changed procedures, but also made a substantial change in the law in holding under the eighth amendment that the government cannot constitutionally apply a mandatory sentence of life without parole for homicides committed by juveniles. Life without parole is justified only where the State shows that it is appropriate and fitting regardless of the defendant's age. We hold that Miller is such a " 'watershed rule[ ] of criminal procedure.’ ”
People v. Williams, 367 Ill.Dec. 503, 982 N.E.2d 181, 197 (Ill.App. 1 Dist.2012).

. Evidence of legislative intent further supports our interpretation. In the House Committee on Criminal Justice, Pete Adams, Executive Director of the Louisiana District Attorneys Association, and Dana Kaplan, Executive Direct of the Juvenile Justice Project of Louisiana, testified the bill was a carefully negotiated compromise and, as part of that compromise, the bill was written to apply prospectively only, leaving the question of Miller s retroactivity to the courts. Thus, Pete Adams testified: "One of the issues that is not addressed in the bill that we’re concerned about is retroactivity. We agreed not to address this in the bill. We believe that the statute on its face is prospective only but of course the courts will make that decision whether they are constitutionally required to be applied retroactively. If the courts decide that the law should be applied retroactively, that is for those already in jail, then this statute will be the vehicle by which those already in jail would gain access. I would just kind of conclude there.” Dana Kaplan concurred: "We also concur with the decision to not have the legislation comment on retroactivity because that’s a matter that the courts themselves will decide.” These comments were then endorsed by the bill’s primary author, Representative Chris Hazel.