PITMAN, J.
hln 1994, Defendant Timothy L. Shaw was convicted of second degree murder, committed by him when he was a juvenile. He received the mandatory sentence of life imprisonment without benefit of probation, parole dr suspension of sentence. His conviction and sentence were upheld on appeal. Following the per. curiam decision' rendered by the Louisiana, Supreme Court in State v. Montgomery, 13-1163 (La. 6/28/16), 194 So.3d 606 (“Montgomery per curiam”), Defendant filed a motion to correct an illegal sentence. The. trial court vacated Defendant’s sentence and resen-tenced him to life imprisonment at hard labor, with benefit of parole eligibility. Defendant appeals his sentence. For the following reasons, we affirrii,
FACTS
On August 21, 1993,' Defendant; áge 17; Charles Suhiler, age 15; and Levelle Tol-liver, an adult;- were playing dice with a group of individuals, including Patrick W. Johnson, on the front porch of a home in Monroe. When the' game ended in the early morning hours, Johnson took his money and began to leave. As he left the porch *609 and moved toward his vehicle, Defendant and Sumler blocked his path. Both of them pointed guns at Johnson and began pulling the triggers. When the guns did not fire, Tolliver approached Johnson, told him to give up his money and then shot him in the back of the head. Johnson died several hours later. Defendant and Sumler later admitted that they had planned to rob Johnson after the game.
Defendant, Sumler and Tolliver were all charged with second degree murder, in violation of La. R.S. 14:30.1. Tolliver’s case was severed from the other two, who were tried together. Following a jury trial, Defendant Land Sumler were found guilty as charged. The sentencing court imposed the mandatory sentence of life imprisonment, without benefit of probation, parole or suspension of sentence. Both appealed their conviction and sentence. In a joint opinion, this court found there was sufficient evidence to establish that they had participated in the armed robbery that resulted in Johnson’s death, as required to support the convictions for second degree murder. Their convictions and sentences were affirmed. See State v. Shaw, 27,892 (La.App. 2 Cir. 4/3/96), 672. So.2d 237; and State v. Sumler, 27,893 (La.App. 2 Cir. 4/3/96), 672 So.2d 237.
Defendant subsequently filed two motions to correct illegal sentence- based on Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (“Milled), which held that a mandatory sentencing scheme that denies parole eligibility for those convicted of a homicide 'committed while the offender was a juvenile violates the Eighth Amendment’s prohibition against cruel and unusual punishment. The first motion, filed September 27, 2012, was denied on October 8, 2012, for lack of evidence that Defendant was a juvenile offender. The second motion, filed on October 25, 2012, was denied on April 1, 2013, on the ground that Miller was not retroactive.
In March 2016, the trial court ordered that counsel be appointed to represent Defendant and ordered that his. presentence investigation (“PSI”) report be forwarded to the court for review.
On March 24, 2016, Defendant filed a pro se motion to correct an illegal sentence, based on the ruling in Montgomery v. Louisiana, — U.S. —, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016) (“Montgomery”), which held that Miller announced a new substantive constitutional rule that was retroactive on state collateral review of defendants whose convictions and sen-tencesjjwere final prior to the decision in Miller. Defendant claimed that a resen-tence of life with parole was not sufficient under Miller and Montgomery and, instead, that he was entitled to be resen-tenced to the penalty for the next lesser-included offense of manslaughter.
On July 29, 2016, Defendant’s attorney filed separate motions seeking funds to hire an investigator and an expert psychologist or psychiatrist in preparation for the Miller hearing on his motions to correct an illegal sentence and to amend his sentence to manslaughter. Additionally, he filed a motion to disclose any information regarding aggravating and mitigating circumstances.-.
On August 8, 2016, Defendant filed a memorandum in support of a- motion to amend his sentence to manslaughter and argued that the trial court had authority to vacate the jury’s verdict and enter a judgment that he was guilty of the lesser and included offense of manslaughter in violation of La. R.S. 14:31. He also argued that a .resentence to life with parole eligibility would not comply with Miller or Montgomery because he would still have-to serve an additional 12 years before being eligible for parole consideration; and, thus, *610 it would not be a meaningful opportunity for parole.
On August 9, 2016, Defendant appeared with counsel for the court to consider the issue of parole eligibility. The trial court noted that it had presided over the trial, was familiar with the facts and circumstances of Defendant’s -case and that he had not been the shooter, but had been a principal in Johnson’s homicide. It stated Defendant was still guilty of second degree murder because he planned with Tolliver to rob Johnson, then put a gun to Johnson’s head and pulled the trigger before Tolliver interceded |4and shot Johnson. It further stated that the cases and statutes directed the sentencing court to reconsider the sentence, not the verdict.
The trial court also found that it did not have authority to set aside the jury’s verdict of second degree murder, which had been upheld on appeal and had already become final many years ago. It stated that it had no authority to amend Defendant’s sentence, which had also been upheld and become final, except to comply with Miller, Montgomery and La. C. Cr. P. art. 878.1, to consider the possibility of parole.
The trial court admitted into evidence the PSI report, as well as the record from the institution where Defendant had been incarcerated for the last 23 years. It denied Defendant’s request to present mitigating evidence after concluding that further evidence was unnecessary in light of its intention to simply grant eligibility for parole.
The trial court denied Defendant’s motion for funding for an investigator and expert psychologist and psychiatrist on grounds that the information was irrelevant in light of the new sentence. Defendant’s motion to amend the sentence under the manslaughter statute was denied as untimely.
Defendant’s motion to correct an illegal sentence was denied as moot, in light of the trial court’s intended ruling. The trial court vacated Defendant’s prior sentence and resentenced him to life imprisonment at hard labor, with the benefit of parole eligibility. Defendant and his attorney objected to the sentence.
On August 10, 2016, Defendant filed a motion to appeal his new sentence. The motion was granted on August 24, 2016.
|fiOn September 2, 2016, Defendant’s counsel filed a motion to reconsider sentence, which was denied on September 8, 2016. On September 8, 2016, Defendant filed a pro se motion to reconsider sentence. On September 9, 2016, the court ordered the state to respond to the pro se motion. There is nothing in the record indicating there was ever a ruling on this motion.
On September 21, 2016, Defendant filed pro se motions to clarify his sentence and to correct an illegal sentence. These motions were denied on September 22, 2016. This appeal followed.
DISCUSSION

Equal Protection

Defendant argues for the first time on appeal that La. C. Cr. P. art. 878.1 violates the Equal Protection Clause of the Fourteenth Amendment because it treats some youthful offenders differently than others. He contends that the statute only applies prospectively to comply with Miller.
In opposition, the district attorney and the attorney general both argue that Defendant failed to raise this constitutional challenge before the trial court and failed to serve the attorney general with the required notice, pursuant to La. C.C.P. art. 1880. The attorney general contends *611 that the constitutional issue was not properly preserved for appeal and is, therefore, not properly before this court. He also contends that the constitutionality of La. C. Cr. P. art. 878.1 was previously challenged in State v. Fletcher, 49,308 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, writ denied, 14-2205 (La. 6/5/15), 171 So.3d 945, cert. denied, — U.S. —, 136 S.Ct. 254, 193 L.Ed.2d 189 (2015), and the claim was found to be without merit. He further argues that | nthe equal protection violation claim is without merit because, under Miller and Montgomery, all juvenile homicide offenders must be sentenced according to La. C. Cr. P. art. 878.1.
In the Montgomery per curiam, the supreme court stated as follows:
The Supreme Court held in Miller that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders. The Supreme Court found that “[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment.” Miller, 132 S.Ct. at 2469. The Supreme Court clarified in Montgomery, 136 S.Ct. at 734, “that Miller drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption” and life without parole can only be a proportionate sentence for the latter. As noted above, the Supreme Court also determined in Montgomery that Miller announced a substantive rule of constitutional law that applies retroactively.
[[Image here]]
To implement Miller’s “meaningful opportunity to obtain release” for those juveniles who commit murder but are not found to be irreparably corrupt, the Legislature in 2013 La. Acts 239 enacted La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E). Article 878.1 requires the District Court to conduct a hearing “[i]n any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense ... to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).” La. R.S. 15:574.4(E) then provides the conditions under which any person serving a sentence of life imprisonment for first or second degree murder committed under the age of 18 can become parole eligible, provided a judicial determination has been made the person is entitled to parole eligibility pursuant to Article 878.1.
Statutes are presumed to be valid, and the constitutionality of .a statute should be upheld whenever possible. State v. Hart, 96-0599 (La. 1/14/97), 687 So.2d 94. A constitutional challenge may not be considered by an appellate court unless it was properly pled and raised in the trial court below. State v. Hatton, 07-2377 (La. 7/1/08), 985 So.2d 709. A constitutional challenge to a state law must be pled or litigated in the trial court in order for the issue to be considered on appeal. State v. Kennedy, 49,036 (La.App. 2 Cir. 5/14/14), 140 So.3d 1201. Additionally, where a statute is alleged to be unconstitutional, the state attorney general must be served with a copy of the proceeding and given the opportunity to be heard. La. C.C.P. art. 1880.
There is no showing in the record that Defendant properly raised his constitutional challenge of La. C. Cr. P. art. 878.1 before the trial court, and there was no showing that the attorney general was *612 served notice of any such claim. Accordingly,. this issue is not properly before this court.

Ex post facto claim

Defendant also argues that La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E) do not apply to him because they were not in effect at the time of the offense and because they violate the - ex post facto clause of the federal and’ state constitutions. He further argues that the trial court erred by not sentencing him to the penalty for 'manslaughter and by not imposing an individualized sentence.
Defendant asserts that La. C. Cr. P. art. 878.1 arid La. R.S. 15:574(E) apply only prospectively. He contends that the ruling in State v. Tate, 12-2763 (La. 11/5/13), 130 So.3d 829, held that Miller did not apply retroactively to cases on collateral review.[1] He also argues that, since the legislature failed to pass legislation that allows him to be resentenced in' accordance with Miller and Montgomery, the trial court should have vacated 18his conviction and sentence, entered a judgment of guilty for the next lesser-included responsive verdict of manslaughter and sentenced him accordingly.
The state argues that the trial court was bound, pursuant to the Montgomery per mriam, to resentence Defendant by applying La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E) and either to impose life imprisonment with or without parole eligibility. It contends that, - once a defendant’s sentence is vacated, La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E) become applicable. It also notes that additional evidence was unnecessary since the court advised that Defendant would be granted parole eligibility. Finally, it argues that Defendant’s claim that he should be resentenced according to the manslaughter statute was previously rejected in State v. Shaffer, 11-1756 (La. 11/23/11), 77 So.3d 939, which held that the appropriate remedy for illegal sentences of life imprisonment at hard labor without possibility of parole for an aggravated rape committed when defendants were under 18 years old was to delete the parole eligibility restriction, not to resentence the defendant according to penalties provided for the lesser-included responsive verdict of attempted aggravated rape.
The law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. Massey v. Louisiana Dep’t of Pub. Safety & Corrs., 13-2789 (La. 10/15/14), 149 So.3d 780.
The punishment for a conviction of second degree murder remains the same today as it was in 1993, the time Defendant committed the offense, and subjects’ him to life imprisonment at hard labor, without benefit of parole eligibility, probation or suspension of sentence. La, R,S.14:30.1.
| ¡Although in its 2016 legislative session, the legislature declined to enact a proposal that addressed the resentencing of juvenile homicide defendants whose convictions were final prior to the Miller decision, the supreme court in the Montgomery per cu-riam applied existing laws and stated:
Therefore, in the absence of further legislative action, the previously enacted provisions should be used for the resen-tencing hearings that must now be conducted on remand from the United States' Supreme Court to determine whether Henry Montgomery, and other prisoners like him, will be granted or denied parole eligibility. Certainly, the legislature is free within constitutional contours to enact further laws governing these resentencing hearings but in the *613 absence of such legislation, this court must provide guidance to the lower courts on the pending cases.'
In providing this guidance, we note that existing legislative enactments are applicable, either directly or by analogy.
The Louisiana Supreme Court vacated Montgomery’s sentence and remanded the case to the trial court for a Miller hearing to be conducted based on La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4. For these reasons, the legislature’s failure to pass the proposed legislation in 2016 does not preclude the trial court from sentencing the defendant to life with parole eligibility.
Eligibility for parole is the sole question to be answered in a Miller hearing; and, accordingly, there is no consideration of whether there should be a downward departure from the mandatory sentence of life imprisonment at hard labor. Rather, the trial court considers only whether that mandatory sentence should include parole eligibility.
The ex post facto clause prohibits the legislature from passing a law that (1) imposes punishment for an act that was not punishable at the time the act was committed and (2) imposes a more severe punishment. U.S. Const. art. I, § 10, cl. 1; La. Const. art. I, § 23; Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). An ex post facto inquiry determines whether the retroactive application of a law increases the defendant’s potential punishment by prolonging incarceration. Massey v. Louisiana Dep’t of Pub. Safety & Corrs., supra; State v. Everett, 00-2998 (La. 5/14/02), 816 So.2d 1272. To prove that a state law violates the ex post facto clause, a defendant must show that the law subjects him to a more severe punishment or longer incarceration than he would previously have been subjected to prior to the enactment of the statute. Id.
Applying La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E) in resentencing a defendant pursuant to Miller does not violate the ex post faeto clause. State v. Williams, 15-0866 (La.App. 4 Cir. 1/20/16), 186 So.3d 242, writ denied, 16-0332 (La. 3/31/17), 217 So.3d 358, 2017 WL 1315822; State v. Graham, 14-1769 (La.App. 1 Cir. 4/24/15), 171 So.3d 272, writ denied, 15-1028 (La. 4/8/16), 191 So.3d 583.
The potential sentence for second degree murder under Miller and Montgomery, applying La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E), is the same sentence as before, i.e., life imprisonment without eligibility for parole, or a less harsh sentence than before, i.e., life imprisonment with eligibility for parole. Both statutes became effective in August 2013, and any parole eligibility granted pursuant to La. C. Cr. P. art. 878.1 was granted in accordance with the conditions for parole specified in La. R.S. 15:574.4(E).
For the foregoing reasons, the application of La. C. Cr. P. art. 878.1 and La. R.S, 15:574.4(E) does not violate the ex post facto clause because those statutes do not subject a defendant to a harsher sentence or a longer |nperiod of incarceration. Furthermore, because juvenile homicide offenders had no potential sentence that included parole eligibility prior to the statutes’enactment in 2013, there is no basis to argue that- a defendant is now subject to harsher parole conditions by application of La. R.S. 15:574.4(E).
Defendant’s argument that he should be sentenced to a lesser-included responsive verdict is without merit. State v. Shaffer, supra; State v. Graham, supra.
' For the foregoing reasons, these assignments of error áre without merit.

Fair Notice Claim

Although Defendant raised several pro se assignments of error, most of them have been addressed earlier in this opinion, with the exception of his claim that the *614 trial court erred by sentencing him in violation of the Fifth Amendment protection of “fair notice.” He argues that the fair notice provision of the due process clause was violated by his sentence to life imprisonment with eligibility for parole under La. R.S. 15:574.4(E) because that sentence was not available at the time he committed the offense in 1993. He asserts that fair notice and due process prevent the trial court from sentencing him to a sentence that was different than the one he could have expected at the time he committed the offense in 1993, when the only sentence available under La. R.S. 14:30.1 was life imprisonment without eligibility for parole.
The requirements to prove the offense of second degree murder have not changed since the crime was committed in 1993, and the potential sentence for committing that crime remains life imprisonment at hard labor. The only current difference is that the trial court may impose the sentence hawith the benefit of parole eligibility, which is a less harsh sentence, even where La. R.S. 15:574.4(E) provides for conditions for parole, because Defendant was not at all previously eligible to be considered for parole. Therefore, he was not deprived of fair warning that his conduct would constitute criminal behavior and he was not prejudiced because his potential sentence was not made more severe by the application of La. R.S. 15:574.4(E). This argument is without merit.
CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant Timothy L. Shaw are affirmed.
AFFIRMED.

. Tate, supra, was abrogated by Montgomery.