# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2019 KA 0969

## STATE OF LOUISIANA

## VERSUS

## ANTHONY JOHNSON

Judgment Rendered: **AUG 0 6 2020**

*J*Ɛ*W*

*PMₒ by JƐW*

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 02-06-0296

Honorable Richard D. Anderson, Judge Presiding

* * * * * *

Hillar C. Moore, III
District Attorney
Dylan C. Alge
Assistant District Attorney
Baton Rouge, Louisiana

Plaintiff/Appellee
State of Louisiana

Anthony Johnson
Louisiana State Penitentiary
Angola, Louisiana

Defendant/Appellant
In Proper Person

Cynthia Meyer
Louisiana Appellate Project
New Orleans, Louisiana

Counsel for Defendant/Appellant
Anthony Johnson

* * * * * *

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

*Holdridge J. concurs w/ brief reasons*

**McCLENDON, J.**

Defendant, Anthony Johnson, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. Defendant, who was seventeen years old at the time of the killing, was found guilty as charged and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appealed his conviction. We affirmed the conviction and sentence, and the Louisiana Supreme Court denied writ of certiorari. See **State v. Johnson**, 08-0083 (La.App. 1 Cir. 6/6/08), 2008 WL 2332278 (unpublished), writ denied, 08-1609 (La. 4/24/09), 7 So.3d 1192.

The United States Supreme Court in **Miller v. Alabama**, 567 U.S. 460, 465, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012), determined that mandatory life imprisonment without parole for those offenders under the age of 18 years at the time they committed a homicide offense violates the Eighth Amendment prohibition of "cruel and unusual punishments." See **State v. Graham**, 11-2260 (La. 10/12/12), 99 So.3d 28 (per curiam). Our supreme court in **Graham** found that unlike the case in **Graham v. Florida**, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (Eighth Amendment precludes sentencing juvenile offenders to life imprisonment without parole for non-homicide crimes), the **Miller** Court did not establish a prohibition against life imprisonment without parole for juveniles, but instead required that a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest possible penalty for juveniles. **Graham**, 99 So.3d at 29.

In **State v. Tate**, 12-2763 (La. 11/5/13), 130 So.3d 829, 841-44, cert. denied, 572 U.S. 1137, 134 S.Ct. 2663, 189 L.Ed.2d 214 (2014), abrogated by, **Montgomery v. Louisiana**, __ U.S. __, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the Louisiana Supreme Court held that the **Miller** rule, which set forth a new rule of constitutional procedure (for sentencing), was not subject to retroactive application and was to be applied prospectively only. Our supreme court further held that LSA-C.Cr.P. art. 878.1 and LSA- R.S. 15:574.4E(1) applied prospectively only. In January of 2016, the United States Supreme Court in **Montgomery** abrogated the **Tate** decision and held that the

2

Supreme Court's decision in **Miller**, prohibiting, under the Eighth Amendment, mandatory life sentences without parole for juvenile offenders, announced a new substantive constitutional rule that was retroactive on state collateral review. **Montgomery**, __ U.S. at __, 136 S.Ct. at 736.

Based on the foregoing, defendant in the instant matter filed a motion to correct illegal sentence. On March 14, 2017, the trial court conducted a sentencing hearing pursuant to **Miller**. Based on the records introduced into evidence and the testimony adduced at the hearing, the trial court denied the motion and resentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant filed a timely motion to reconsider the sentence, which was denied. Defendant now appeals, designating three assignments of error. We affirm the sentence.

The pertinent facts of this case, set out in full in this court's unpublished opinion, **Johnson**, 2008 WL 2332278, at *1-2, are as follows:

> On December 11, 2005, between 3:30 p.m. and 4:00 p.m., four coworkers were riding together and heading southbound on River Road in Baton Rouge, when they observed a blue Jeep Cherokee stopped in the middle of the road, approximately a quarter of a mile away. The passenger in the back seat, later identified as Robert Edwards, exited the Cherokee and began walking southbound. The passenger in the front seat, later identified as the defendant, exited the Cherokee, walked around to the driver's side, pulled the driver, later identified as Daniel Magee, the victim herein, from the driver's seat and threw him on the side of the road. The defendant returned to the Cherokee, which was owned by Magee, and passed the four coworkers in their vehicle as he fled northbound on River Road in the Cherokee vehicle. . . . Magee had been shot twice and died of his wounds.
>
> \*         \*         \*
>
> Sergeant Leonardo Moore . . . proceeded to the unit of the fourplex at which the defendant was supposed to be residing. The unit, which was virtually empty, had been abandoned by the tenants for nonpayment of rent. Sergeant Moore looked in a plastic garbage can right outside of the unit and found the murder weapon, a Hi-Point .380 semiautomatic pistol. The two bullet casings found in the Cherokee and the two bullets retrieved from Magee's body were shown to have come from the .380 pistol found by Sergeant Moore.
>
> \*         \*         \*
>
> Following Detective Lechuga's interview of the defendant, Sergeant Moore interviewed the defendant . . . [who] told Sergeant Moore that Magee had been driving, and that the defendant had been in the front passenger seat, with Edwards in the back seat. Edwards handed the

3

defendant the .380 pistol with the safety off. The defendant told Edwards the safety was off, and Edwards grabbed the defendant's hand that was holding the gun, and told the defendant to give the gun back to him. A struggle over the gun ensued. The grabbing of the defendant's hand by Edwards caused the trigger to be squeezed. The gun discharged three times, and according to the defendant, Magee was accidentally struck and killed.

## ASSIGNMENTS OF ERROR NOS. 1 and 2

In these related assignments of error, defendant argues, respectively, that the sentencing court failed to comply with the principles enunciated in **Miller;** and that his life sentence without parole is constitutionally excessive.[1]

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. **State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. **State v. Livous**, 18-0016 (La.App. 1 Cir. 9/24/18), 259 So.3d 1036, 1044, writ denied, 18-1788 (La. 4/15/19), 267 So.3d 1130. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. **State v. Scott**, 17-0209 (La.App. 1 Cir. 9/15/17), 228 So.3d 207, 211, writ denied, 17-1743 (La. 8/31/18), 251 So.3d 410. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. **State v. Brown**, 02-2231 (La.App. 1 Cir. 5/9/03), 849 So.2d 566, 569.

The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows

---

[1] In a *pro se* "Supplement To Direct Appeal," defendant asserts that he is entitled to a new sentencing hearing and questions whether retroactive application of the law increased his punishment. To whatever extent these are arguments, they are baseless. Defendant has had a **Miller** hearing; and the United States Supreme Court in **Montgomery** held that **Miller** announced a new substantive constitutional rule that was retroactive on State collateral review.

4

an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. **State v. Lanclos**, 419 So.2d 475, 478 (La. 1982); **Scott**, 228 So.3d at 211. The trial court should review a defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. **State v. Jones**, 398 So.2d 1049, 1051-52 (La. 1981); **State v. Spikes**, 17-0087 (La.App. 1 Cir. 9/15/17), 228 So.3d 201, 204-05.

In **Miller v. Alabama**, 567 U.S. at 479-89, 132 S.Ct. at 2469-75, the Supreme Court held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. The Supreme Court, however, made clear that it did not prohibit life imprisonment without parole for juveniles, but instead required that a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest possible penalty for juveniles who have committed a homicide offense. See **State v. Simmons**, 11-1810 (La. 10/12/12), 99 So.3d 28 (per curiam). Under **Miller**, 567 U.S. at 489, 132 S.Ct. at 2475, for homicide-related offenses, a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.

Defendant argues in brief that at the **Miller** hearing, the sentencing judge (who was also the judge at defendant's trial) failed to take into account his unique characteristics, failed to articulate mitigating and aggravating factors, and failed to find that he is one of the worst offenders and this was one of the worst offenses. According to defendant, the judge focused on defendant's behavior in prison, rather than on his limited intellectual capacity, his history of being treated for psychiatric illness, and the fact that his mother abandoned him as an infant, resulting in some time spent in foster care. Also, according to defendant, the sentencing judge failed to take into account that the majority of his infractions in jail were minor and non-violent.

As dictated by **Miller**, a thorough sentencing hearing was conducted. Defendant had just recently turned seventeen years old when he murdered his victim. He has

5

been in Angola prison for the past ten years since that time and, as such, the only recent and relevant time for assessing defendant's progress and growth, if any, would have been those years incarcerated. Perry Stagg, Deputy Assistant Secretary for the Department of Corrections, testified at the hearing. Stagg noted he had been with the Department of Corrections for twenty years and was an assistant warden at Angola prison for ten years. As a prisoner, Stagg described defendant as a "disciplinary problem."

Stagg indicated that in the ten years that defendant had been at Angola, since 2007, he has had thirty-nine disciplinary reports. According to Stagg, defendant has broken the rules on several occasions by having contraband, such as drugs and a cell phone, inside the prison. Stagg noted that since the beginning of 2017, defendant had two "Rule 21" violations for aggravated sex offenses. In those instances, defendant was masturbating in front of a female staff member and refused to stop. Defendant also had four Rule 3 violations, which are very serious defiance charges. In 2012, defendant was arrested for battery of a correctional officer.

Stagg further noted that defendant had been enrolled in school several times to obtain his GED, but had been "kicked out" three times for disciplinary reasons, unrelated to school or his classes. Defendant has never obtained his GED. Stagg testified that defendant had never sought vocational school skills; he had not taken any classes for substance abuse or anger management; and as such, defendant had "zero programming" on his record.[2]

In describing the disciplinary process at Angola, Stagg explained that, depending on the severity of the rule that was broken, the inmate would go back to his original housing area or would be locked in administrative segregation in a cell until he went to disciplinary court, where his case would be heard. If found guilty, the inmate would be sanctioned "anywhere from a reprimand or a loss of canteen time to all the way to going to Camp J, which is the disciplinary unit at Angola which houses the worst of the worst inmates." Stagg opined, "Camp J is basically the jail within the prison." He

---

[2] The appellate record contains a certificate dated June 25, 2014, acknowledging that defendant successfully completed the Camp C-PCC Substance Abuse Program.

6

continued: "It does hold the ones that are serious disciplinary problems. Most of the time they are violent inmates or inmates who have been known to bring large amounts of contraband into the institution or inmates that are a threat to the staff." When asked if defendant had spent time in Camp J, Stagg testified, "His record shows he's spent quite a bit of time there."

On cross-examination, Stagg indicated that defendant had never been accused of being in possession of heroin, a knife, or a gun while in prison. Stagg further revealed that because he had not reviewed defendant's medical records, he would not know whether defendant entered Angola on prescribed psychotropic medication or with any particular health issues.

The trial court took the matter under advisement to review all the records. Approximately one month later, the trial court provided its ruling in open court, finding in pertinent part:

> The court has considered the evidence presented at the trial, the sentencing hearing, argument of counsel, and the court record. The defendant killed the victim in cold blood and took his vehicle, possibly any money he may have had on him. He pulled the victim out of his vehicle and left him in the middle of the road. He later tried to blame this on a friend. So it appears that the defendant is not only okay with killing a human being, but also blaming another one with the possibility that that other one could serve the rest of his life in the penitentiary for a murder that the defendant committed. Prior to this the defendant was ungovernable as a juvenile. After his arrest and conviction he appears to still be ungovernable based on his rap sheet and also the testimony of the now deputy director of [the] Department of Corrections and former assistant warden at Angola who testified that the defendant had 39 disciplinary reports, including 13 rule 1 violations, which include contraband, everything from drugs to cell phones, and one or two rule 21, including an aggravated sex offense, battery on a correctional facility employee. He also testified the defendant hasn't done much to better himself. He hasn't even gotten his GED. He's been enrolled in the school several times, but gets put out of the school because of other rule infractions; not necessarily while he's in school, but some of these other 39 problems. It doesn't appear the defendant has changed a whole lot. It doesn't appear that -- as I said, he was ungovernable then. He's ungovernable now, always puts himself above or before others. For these reasons the court sentences the defendant to life without parole.

A little less than two years later in February of 2019, the trial court conducted a hearing based on defendant's motion to reconsider sentence. The prosecutor reminded the court that defendant had incurred 39 infractions in the ten years he had been in Angola, from 2007 to the 2017 **Miller** hearing. The prosecutor then pointed out that,

from April of 2017 to January of 2019, defendant had 84 infractions. That is, in less than a two-year period, defendant had more than doubled the rules violations that he had acquired over a ten-year period. The prosecutor concluded:

> I don't even know how old he is, but he has been at Angola for at least 12 years now. His brain has had plenty of time to [develop], and, unfortunately, his behavior has just gotten worse rather than gotten better. We have actually -- we have been able to see how his brain developed, and in this case, Your Honor, he just is a very dangerous individual and is certainly incorrigible under the terms of **Montgomery**.

The trial court ruled as follows: "Based on everything that's in the record, based on the hearing, based on what I have had placed in the record today, I deny the motion to reconsider, and his sentence will remain the same."

Defendant's sentence is not excessive. In its reasons for sentencing defendant to life imprisonment without benefit of parole, it is clear, as required under **Miller**, that the trial court thoroughly considered defendant's youth and the possibility for rehabilitation. See **State v. Montgomery**, 13-1163 (La. 6/28/16), 194 So.3d 606, 609 (identifying additional circumstances a trial court could consider at a **Miller** hearing in addition to those in LSA-C.Cr.P. art. 878.1). There was little, if any, mitigating evidence adduced on behalf of defendant. Defendant is clearly a dangerous individual who poses an unusual risk to the public safety due to his conduct of repeated criminality.

The trial court complied with **Miller** and adequately considered the factors set forth in Article 894.1. See LSA-C.Cr.P. art. 878.1. Considering the testimony adduced at the sentencing hearings, the trial court's careful review of the circumstances, and the nature of the senseless murder, we find no abuse of discretion by the trial court, who provided ample justification in imposing a life sentence without the possibility of parole. See **State v. Mickey**, 604 So.2d 675, 679 (La.App. 1 Cir. 1992), writ denied, 610 So.2d 795 (La. 1993). Accordingly, the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.

These assignments of error are without merit.

### ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, defendant argues his ten-to-two non-unanimous jury verdict should be declared invalid because it violated his due process and equal

8

protection rights. Defendant argues that a unanimous verdict is required under the Sixth Amendment. Specifically, defendant contends that LSA-C.C.P. art. 782A and LSA-Const. art. I, § 17(A) (providing for non-unanimous jury verdicts for offenses committed before January 1, 2019) violate the Fourteenth Amendment's Equal Protection Clause of the United States Constitution.

In the recent decision of **Ramos v. Louisiana**, __ U.S. __, 140 S.Ct. 1390, 1397, 206 L.Ed.2d 583 (2020), the United States Supreme Court overruled **Apodaca v. Oregon**,[3] 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) and held that the right to a jury trial under the Sixth Amendment of the United States Constitution, incorporated against the States by way of the Fourteenth Amendment of the United States Constitution, requires a unanimous verdict to convict a defendant of a serious offense. The **Ramos** Court further noted that its ruling applied to those defendants convicted of felonies by non-unanimous verdicts whose cases are still pending on direct appeal. **Ramos**, 140 S.Ct. at 1406.

In **State v. Brown**, 19-370 (La.App. 5 Cir. 1/15/20), 289 So.3d 1179, 1181-82, the defendant had his conviction and sentence affirmed on appeal in 1997. The defendant was a juvenile when he committed the murder for which he was convicted and, thus, under **Miller** and **Montgomery**, he was granted a new sentencing hearing and resentenced to life with parole. Following his resentencing, the defendant appealed his conviction by a non-unanimous jury verdict. The defendant's appeal was decided by the fifth circuit three months before **Ramos** was handed down.

The fifth circuit found that although Brown was resentenced pursuant to **Miller**, and legitimately exercised his right to appeal that resentencing, his resentencing did not allow him the opportunity to challenge his previously affirmed convictions. **Brown**, 289 So.3d at 1187. In rejecting the defendant's contention that his **Miller** resentencing entitled him to have his convictions relitigated, the fifth circuit concluded: "opining at this time as to whether or not Mr. Brown would benefit from a favorable ruling in **Ramos** would be ... inappropriate, given that **Ramos** has not been decided at the

---

[3] Oregon's non-unanimous jury verdict provision of its state constitution was challenged in **Apodaca**. **Johnson v. Louisiana**, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), decided with **Apodaca**, upheld Louisiana's then-existing constitutional and statutory provisions allowing nine-to-three jury verdicts.

9

time. Mr. Brown must, wait until **Ramos** is decided, to adjudicate the issue of his convictions' constitutionality via collateral review." **Brown**, 289 So.3d at 1188-89 and 1192.

Brown then filed a writ of certiorari seeking review of the fifth circuit's decision by the Louisiana Supreme Court. The supreme court recently denied the writ application. Chief Justice Johnson concurred in the denial, finding that the defendant was entitled to an appeal of his new sentence, but not the underlying conviction. **State v. Brown**, 20-00276 (La. 6/22/20), __ So.3d__, 2020 WL 3446058, *1. In particular, Chief Justice Johnson concurred in the denial of the defendant's writ application despite his conviction by a non-unanimous jury verdict in this case, finding that after Brown was resentenced pursuant to **Miller** and **Montgomery**, "he was entitled to an appeal of his new sentence, *not the underlying conviction.*" **Id.** (emphasis added). Chief Justice Johnson concluded that Brown's 1996 conviction was final long before the **Ramos** decision and wrote "separately to emphasize that this writ denial does not preclude Mr. Brown from making a collateral challenge to his conviction by non-unanimous jury verdict under LSA-C.Cr.P. art. 930.3(1) and 930.8A(2)." **Id.**

Similarly, in the instant matter, defendant's conviction, affirmed in 2008, became final long before the **Ramos** decision. Accordingly, we find that while defendant was entitled to appeal his new sentence under **Miller**, he is not entitled to appeal his conviction pursuant to **Ramos**, wherein the **Ramos** Court specifically found that its ruling applied to those defendants convicted of felonies by non-unanimous verdicts whose cases are still pending on direct appeal.

This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm defendant's sentence.

**SENTENCE AFFIRMED.**

10

| STATE OF LOUISIANA | STATE OF LOUISIANA |
| --- | --- |
| VERSUS | COURT OF APPEAL |
| ANTHONY JOHNSON | FIRST CIRCUIT |
|  | NO. 2019 KA 0969 |



**HOLDRIDGE, J., concurring in the result.**

I respectfully concur in the result. However, as stated by Chief Justice Johnson in her concurrence in **State v. Brown**, 2020-00276 (La. 6/22/20), __ So.3d__, 2020 WL 3446058, *1., this opinion does not preclude Mr. Johnson from making a collateral challenge to his conviction by a non-unanimous jury verdict under La. C. Cr. P. arts. 930.3(1) and 930.8A(2).